

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 11, 2017

## STATE OF TENNESSEE v. JAMES COURTNEY SHANE

**Appeal from the Circuit Court for Weakley County**
**No. 2016-CR-22     Jeffrey W. Parham, Judge**

_____

### No. W2016-01976-CCA-R3-CD

_____

The Defendant, James Courtney Shane, was convicted by a Weakley County Circuit Court jury of facilitation of robbery, a Class D felony, and was sentenced by the trial court as a Range II offender to five years in the Department of Correction, to be served consecutively to his sentence in a federal case. On appeal, the Defendant challenges the sufficiency of the evidence of his identity and argues that the trial court imposed an excessive sentence. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and J. ROSS DYER, JJ., joined.

Joseph P. Atnip, District Public Defender; and William K. Randolph, Assistant Public Defender, for the appellant, James Courtney Shane.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Thomas A. Thomas, District Attorney General; and Kevin D. McAlpin, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

According to the State's proof at trial, on the night of September 6, 2015, the victim, Jimmy Travis, was visiting with friends at a Martin home when the Defendant asked him to step outside with him. Outside, a group of men surrounded the victim, forced him to sit down, and took ten dollars from him. The Defendant and a co-defendant, Dalton Eric Crutchfield, Jr., were subsequently indicted for the robbery of the

victim and were tried together before a Weakley County Circuit Court jury, which convicted the Defendant of the lesser-included offense of facilitation of robbery and acquitted Mr. Crutchfield.

At trial, the victim testified that on the evening of September 6, 2015, he accompanied a friend named Brittany to the Martin home of one of her friends, Sarah, where "a bunch of people" he did not know were "hanging out." At some point that evening, a man asked him to go outside to talk. Once outside, the man kept telling him that he owed the man money from back in high school. The victim said he did not know the man, did not owe him any money, and told him so. The man, however, was insistent and appeared angry, so in an effort to appease him, the victim finally said, "Look, I've got ten dollars; that's all I got. I can give that to you and we'll call it even." At that point, "a bunch of people" surrounded him, which frightened him. A man behind him took him by the shirt and forced him to sit down, and "[t]hey" then took his boots and socks, telling him to "stay down and don't get up." The man who had asked him to come outside also took the ten dollars from him. Afterwards, the individuals returned his boots and he went back into the house briefly before driving to the police department to report the crime. The victim stated that he was unable to identify for the police either the man who took his money or the man who forced him to sit on the ground.

On cross-examination, the victim acknowledged he had a 2012 conviction for theft of property under $500. He further acknowledged that he told the police that a man in dreadlocks robbed him and that he was unable to identify the Defendant from photographic lineups he was shown by the police. In fact, he believed that he had identified a man known as "D-Bone," or something similar, instead of the Defendant. He insisted, however, that he recognized the Defendant and his co-defendant as the perpetrators when looking at them "face-to-face" in the courtroom.

Elijah Tyreek Guiden, who lived with Sarah Mealer in the Martin home on September 6, 2015, testified that the Defendant, who was a frequent visitor to his home, was the individual who asked the victim to go outside with him. Mr. Guiden further testified that it was himself, Eric Denton, the Defendant, and the co-defendant, Dalton Crutchfield, who were standing outside with the victim behind the house when the victim was robbed. He denied, however, that he had anything to do with the robbery. He stated that the men "[g]rabbed [the victim] by his arm and sat him down" but did not force him to stay down. He testified that the victim removed his boots and gave them to Mr. Crutchfield, and that Mr. Denton instructed Mr. Crutchfield to give the boots back to the victim. He did not see who took the victim's cash.

On cross-examination, Mr. Guiden testified that approximately ten minutes lapsed from the time the Defendant and the victim went outside before he joined them. He

further testified that neither the Defendant nor Mr. Crutchfield had dreadlocks at that time. On redirect examination, he acknowledged that in his statement to police, he reported that the Defendant and Mr. Crutchfield "took [the victim's] boots, socks, and money." He reiterated, however, that he did not see "[any] money . . . taken."

Sarah Mealer testified that on the night of September 6, 2015, the victim and Brittany were visiting at the home she shared with Mr. Guiden and her children when the Defendant, a regular guest in the home, asked the victim to go outside with him. She did not see anything that transpired outside. On cross-examination, she testified that when the victim came back inside, he told her that "they" had robbed him but did not mention any names or describe the perpetrators. After the Defendant left, Mr. Guiden told her not to mention the Defendant's name.

Brittany Flowers testified that she and the victim were together in the living room of the home when the Defendant approached the victim and asked if he could pull him aside for a few minutes. She said the victim then got up and left with the Defendant. On cross-examination, she testified that, although she did not know the Defendant, she had "seen him around" before that night. She said she did not see Mr. Crutchfield that night.

Eric Denton, the sole witness for the defense, testified that when he arrived at the back of the house, a "tall skinny dude with some dreads," whom he thought was Marcus Bardwell, already had possession of the victim's boots. He said he told the man to return the boots to the victim. He did not see anyone rob the victim of his cash and did not see the Defendant that night. He further testified that neither the Defendant nor Mr. Crutchfield had dreadlocks. On cross-examination, he testified that he was related to Mr. Crutchfield and denied that he was friends with the Defendant.

After deliberations, the jury convicted the Defendant of the lesser-included offense of facilitation of robbery and acquitted Mr. Crutchfield of all charges.

## ANALYSIS

### I. Sufficiency of the Evidence

The Defendant first contends that the evidence is insufficient to sustain his conviction, "given the remarkably weak evidence in regard to identity." In support, he cites the fact that the victim was unable to identify the Defendant from a photographic spreadsheet and reported that the robber had dreadlocks, whereas the Defendant, according to other witnesses, did not wear his hair in dreadlocks. The State responds by arguing that, based on the testimonies of Elijah Tyreek Guiden, Sarah Mealer, and Brittany Flowers, who each identified the Defendant as the man who asked the victim to

go outside, a rational jury could conclude that the Defendant was the person who lured the victim outside and facilitated the taking of his money and boots. We agree with the State.

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

"A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear. Tenn. Code Ann. § 39-13-401(a). "A person is criminally responsible for the facilitation of a felony, if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under

-4-

§ 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Id. § 39-11-403(a). Thus, to sustain the conviction for facilitation of robbery, the State had to prove beyond a reasonable doubt that the Defendant, knowing that one or more of the men outside intended to intimidate or forcibly take the victim's money from him, but without the intent required for criminal responsibility, knowingly furnished substantial assistance to that other person or persons in the commission of the robbery.

At trial, three different witnesses, in addition to the victim, identified the Defendant as the individual who approached the victim in the home and asked him to go outside with him. All three of those witnesses, unlike the victim, had seen the Defendant before and were familiar with him. Once outside the home, a group of men surrounded the victim, and one or more of them forced him to the ground while others took his boots and cash. His boots were returned to him, but not his cash. From this evidence, a rational jury could reasonably find that the Defendant facilitated the robbery of the victim. We conclude, therefore, that the evidence is sufficient to sustain the Defendant's conviction.

## II. Sentencing

The Defendant also contends that the trial court imposed an excessive sentence. He does not challenge his classification as a Range II offender or the trial court's order of consecutive sentencing, but he instead argues that the trial court erred by enhancing his sentence beyond the minimum in his range. In support, he points out that no weapon was involved and the victim was unharmed. The State responds by arguing that the trial court properly imposed a within-range sentence after consideration of the evidence and the sentencing principles. We, again, agree with the State.

Under the 2005 amendments to the sentencing act, a trial court is to consider the following when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

> (1) The evidence, if any, received at the trial and the sentencing hearing;
>
> (2) The presentence report;
>
> (3) The principles of sentencing and arguments as to sentencing alternatives;
>
> (4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b) (2012).

The trial court is granted broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and the sentencing decision of the trial court will be upheld "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." State v. Bise, 380 S.W.3d 682, 709-10 (Tenn. 2012). Accordingly, we review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707.

The only witness at the sentencing hearing was the probation and parole officer who prepared the Defendant's presentence report, who testified that the Defendant, as indicated in the report, had a substantial history of criminal convictions and was on probation from a federal drug offense at the time he committed the instant offense. In determining the length of the Defendant's sentence, the trial court found the following enhancement factors applicable: that the Defendant had a history of criminal convictions or criminal behavior in addition to those necessary to establish his classification as a Range II offender; that the Defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community; and that the Defendant was released on federal probation at the time he committed the offense. See Tenn. Code Ann. § 40-35-114(1), (8), (13)(C). The court found no applicable mitigating factors. Accordingly, the trial court sentenced the Defendant to five years, one year beyond the minimum sentence in his range. Id. § 40-35-112(b)(4).

The record reflects that the trial court properly considered the enhancement and mitigating factors, imposed a sentence within the applicable range for the Defendant's Class D felony offense, and made the requisite findings in support of its ruling. Accordingly, we affirm the sentence imposed by the trial court.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____

ALAN E. GLENN, JUDGE